IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JULIET MBABAZI and KHALDOUN CHERDOUD<br><br>Plaintiff/Relators,<br>v.<br><br>WALGREEN CO.<br><br>Defendant. | **Under Seal and In Camera**<br><br>Civil Action No. |

# COMPLAINT

Relators Juliet Mbabazi and Khaldoun Cherdoud bring this action on behalf of the United States of America under the *qui tam* provision of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3730(b), against Defendant Walgreen Co. ("Walgreens"), and allege as follows:

## INTRODUCTION

1. "Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S. Rep. No. 99–146, at 313 (1985).

2. Federal law requires states to implement "third party liability (TPL) programs" which "ensure that Federal and State funds are not misspent for covered

1

services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services." 55 Fed. Reg. 1423, 1423–24 (1990).

3. Pennsylvania ensures Medicaid's secondary payer status by requiring providers to utilize other insurance benefits "before billing the [Medicaid] program." 55 Pa. Code § 1101.64. And by prohibiting providers from rendering a non-emergency service without first verifying that the Medicaid recipient has no other medical benefits. 55 Pa. Code § 1101.75. Compliance with these requirements is a condition of payment for pharmaceutical services. 55 Pa. Code §§ 1121.11(c), 1121.51.

4. This *qui tam* action arises from Walgreens's practice of indiscriminately billing whatever insurance is attached to a customer's profile in Walgreens's internal computer system, even if that insurance is Pennsylvania Medicaid. Walgreens does not inquire into or utilize other insurance benefits before billing Medicaid.

5. Walgreens's billing practice violates Pennsylvania's secondary payer regulations, rendering the resulting claims to Medicaid false and fraudulent.

## THE PARTIES

6. Relator Juliet Mbabazi ("Mbabazi") is an adult individual who resides in Delaware County, Pennsylvania.

7. Relator Khaldoun Cherdoud ("Cherdoud") is an adult individual who resides in Philadelphia County, Pennsylvania.

8. Defendant Walgreen Co. ("Walgreens") is an Illinois corporation with its principal place of business in Lake County, Illinois.

## JURISDICTION AND VENUE

9. This action arises under the laws of the United States to redress violations of the FCA, 31 U.S.C. §§ 3729–3733.

10. This Court has original jurisdiction over FCA claims under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

12. This Court has personal jurisdiction over Walgreens through its participation in Pennsylvania's Medicaid program, as well as its regular and substantial business activity in Pennsylvania.

## APPLICABLE LAW

I. **MEDICAID IS THE PAYER OF LAST RESORT**

    A. **Federal Secondary Payer Requirements**

13. To qualify for federal funding, state Medicaid programs must "take all reasonable measures to ascertain the legal liability of third-parties" for claims to the program. 42 U.S.C. § 1396a(25)(A).

14. Federal law defines "third parties" to include "health insurers, self-insured plans, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974, service benefit plans, managed care organizations, pharmacy benefit managers, or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service." *Id.*

15. Providers may not seek payment from Medicaid where third parties are obliged to pay an amount at least equal to the amount that Medicaid would pay. *See* 42 U.S.C. § 1396a(25)(C).

16. Providers may seek payment from Medicaid if the amount that Medicaid would pay exceeds what the third parties pay, but the provider may only collect the difference. *See id.*

17. If legal liability of a third party is found to exist after Medicaid has made payment, the state Medicaid program must seek reimbursement to the extent of such legal liability. 42 U.S.C. § 1396a(25)(B).

18. Federal regulations, at Subpart D of 42 C.F.R. § 433, require providers to utilize insurance benefits provided by a "third party" before billing a state's Medicaid program.

19. "If the agency has established the probable existence of third party liability at the time the claim is filed, the agency must reject the claim and return it

to the provider for a determination of the amount of liability." 42 C.F.R. § 433.139(b)(1).

20. Thus, under federal law, Medicaid benefits are always secondary to all other forms of insurance. Providers are prohibited from billing Medicaid, and Medicaid is prohibiting from paying providers, when there is other coverage.

    **B.**    **Pennsylvania's Secondary Payer Requirements**

21. Pennsylvania refers to its Medicaid program as "Medical Assistance" or "MA." *See* 55 Pa. Code § 1101.21.

22. To satisfy the above federal requirements, and qualify for federal funding, Pennsylvania has secondary payer regulations that establish a "cost avoiding" system. This system places the burden of identifying and securing payment from third parties onto providers.

23. For example, Pennsylvania law requires providers to utilize "[o]ther private or governmental health insurance benefits . . . before billing the MA Program." 55 Pa. Code § 1101.64(a).

24. Providers are thus required to "make reasonable efforts to secure from the recipient sufficient information regarding the primary coverages necessary to bill the insurers or programs. . . . The information needed to bill third parties includes the insurer's name and address, policy or group I.D. number, and the patient's or the patient's employer's address." *Id.*

25. "When the total amount of payment by the third-party resource is less than [Pennsylvania Medicaid's] fee or rate for the same service, the provider may bill the [Pennsylvania Medicaid] for the difference . . . ." *Id.* Even then, the provider's Medicaid invoice must include "a copy of the third party's statement of payments attached." *Id.*

26. "If a third-party resource refuses payment to the provider based on coverage exclusions or other reasons, the provider may bill [Pennsylvania Medicaid] by submitting an invoice with a copy of the third party's refusal advisory attached." *Id.*

27. It is illegal under Pennsylvania law for a provider to "dispense, render or provide a [non-emergency] service or item to a patient claiming to be a recipient without first making a reasonable effort to verify . . . that the patient is an eligible [MA] recipient *with no other medical resources*." 55 Pa. Code. § 1101.75(a)(11) (emphasis added) (listing provider prohibited acts).

28. Providers who commit the above prohibited act are subject to an enforcement action for double the amount paid plus interest, as well as loss of enrollment. *See* 55 Pa. Code § 1101.83(e).

29. A provider's compliance with Pennsylvania's secondary payer regulations is an express condition of payment from Medicaid. 55 Pa. Code § 1121.11(c).

6

30. Pennsylvania's regulations explicitly state: "Payment will not be made for a compensable pharmaceutical service if payment is available from another public agency or another insurance or health program." 55 Pa. Code § 1121.51.

31. Pennsylvania's Department of Humans Services ("DHS"), which administers the Commonwealth's Medicaid program, issues provider billing manuals.

32. DHS's pharmacy billing manual contains an entire section on "Third Party Liability, Other Insurance and Medicare." Pa. Dep't Human Servs., NCPDP D.0 Pharmacy Billing § 4.6 (Oct. 17, 2017), *available at* http://www.dhs.pa.gov/cs/groups/webcontent/documents/document/s_001851.pdf.

33. The pharmacy billing manual advises: "Medical Assistance is considered the payer of last resort. All other insurance coverage must be exhausted before billing MA. . . . It is your responsibility to ask if the beneficiary has other coverage not identified [by DHS] (i.e., Worker's Compensation, Medicare, etc.). . . . If other insurance coverage exists, you must bill it first. You would only bill MA for unsatisfied deductible or coinsurance amounts or if the payment you receive from the other insurance coverage is less than the MA fee for that service." *Id.*

34. Electronic claims from pharmacies to Pennsylvania Medicaid are formatted pursuant to industry billing standards set by the National Council for Prescription Drug Programs ("NCPDP"). *Id.*

35. The NCPDP standards, in accordance with DHS's pharmacy billing manual, require the pharmacy to expressly certify whether a beneficiary has other insurance coverage when submitting a claim to Pennsylvania Medicaid. *See* Pa. Dep't Human Servs., Pennsylvania PROMIS*e* – NCPDP Version D.0 Companion Guide, Billing Claim Segment, Field Number 308 (Sept. 2010), *available at* http://www.dhs.pa.gov/cs/groups/webcontent/documents/manual/s_002728.pdf.

36. As explained above, Pennsylvania Medicaid will deny a claim when other coverage may be available. Thus, to obtain payment from Pennsylvania Medicaid, a pharmacy must certify that no other coverage exists or that the other insurer has already paid or denied the claim.

### C. Duty to Return Overpayments

37. Federal law requires providers to return overpayments. 42 U.S.C. § 1320a-7k(d); *see also* 42 C.F.R. § 401.305.

38. "The term 'overpayment' means any funds that a person receives or retains under [Medicare] or [Medicaid] to which the person, after applicable reconciliation, is not entitled . . . ." 42 U.S.C. § 1320a-7k(d)(4)(B).

39. Providers are thus required to return Medicaid payments if the provider discovers, or through the exercise of reasonable diligence should have discovered, that a third party is obliged to pay an amount at least equal to the amount paid by

Medicaid. *See* 42 U.S.C. § 1396a(25); 42 U.S.C. § 1320a-7k(d); 81 Fed. Reg. 7654, at 7664 (discussing 42 C.F.R. § 401.305).

40. Pennsylvania law also requires providers to reimburse Medicaid if the provider discovers other coverage after receiving payment from Medicaid. *See* 55 Pa. Code § 1101.69(a) ("[I]f a provider discovers . . . that a recipient has other coverage for a service for which [Pennsylvania Medicaid] has made a payment, the provider . . . shall reimburse [Pennsylvania Medicaid] the amount of the overpayment according to the instructions in the provider handbook.").

41. To ensure that providers comply with the foregoing secondary payer requirements, DHS's Division of Third Party Liability hires private contractors to conduct *ex post facto* audits to confirm there was no other coverage for a claim paid by Pennsylvania Medicaid. If the audit reveals potential commercial or Medicare coverage, DHS orders the provider to pay restitution, unless the provider can produce a denial letter and explanation of benefit from the primary insurer. *See* 55 Pa. Code. § 1101.83(a), (c).

42. DHS may also institute a civil enforcement action for double damages and termination of enrollment against providers that bill Pennsylvania Medicaid without first verifying that no other coverage exists. *See* 44 Pa. Code §§ 1101.83(e), 1101.75(a)(11).

## II.     FALSE CLAIMS ACT

43.    The FCA, 31 U.S.C. §§ 3729–3733, prohibits the submission of false or fraudulent claims to the government and authorizes private individuals to bring *qui tam* actions on behalf of the government in exchange for the right to retain a portion of any resulting damages award.

44.    The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

45.    The terms "knowing" and "knowingly" "(A) mean that a person, with respect to information -- (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1).

46.    There are two categories of false claims under the FCA: a factually false claim and a legally false claim. A claim is factually false when the claimant misrepresents what goods or services it provided to the government, and a claim is legally false when the claimant falsely certifies compliance with a statute or regulation that is a condition for government payment.

47.    Legally false claims may be express or implied. Under the "express false certification" theory, an entity is liable under the FCA for falsely certifying that

it is in compliance with regulations that are prerequisites to government payment in connection with the claim for payment of federal funds. Under the "implied false certification" theory, an entity is liable if it seeks and makes a claim for payment from the government without disclosing that it violated regulations that affected its eligibility for payment.

48. Under its so-called "reverse false claims provision," the FCA also imposes liability on any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

49. As discussed above, federal law obligates providers to report and return an overpayment within 60 days of discovering the overpayment. 42 U.S.C. § 1320a-7k(d)(2); *see also* 42 C.F.R. § 401.305.

50. "The term 'overpayment' means any funds that a person receives or retains under [Medicare] or [Medicaid] to which the person, after applicable reconciliation, is not entitled . . . ." 42 U.S.C. § 1320a-7k(d)(4)(B).

51. "[P]roviders and suppliers have a clear duty to undertake proactive activities to determine if they have received an overpayment or risk potential liability for retaining such overpayment." 81 Fed. Reg. 7654, at 7664.

52. If a provider has actual knowledge of an overpayment, and fails to timely report and return the overpayment, then the provider is liable under 31 U.S.C. § 3729(a)(1)(G). *See* 42 U.S.C. § 1320a-7k(d)(2)–(4).

53. If a provider recklessly disregards its duty to exercise reasonable diligence in identifying overpayments, or deliberately ignores information regarding an overpayment, the provider is likewise liable under 31 U.S.C. § 3729(a)(1)(G). *Id.*

## FACTS

54. Mbabazi is a licensed pharmacist.

55. Walgreens employed Mbabazi as a pharmacist from January 2016 through January 2018.

56. During her employment with Walgreens, Mbabazi worked at over 40 retail locations in Eastern Pennsylvania, spending most of her time at stores in Philadelphia.

57. Mbabazi worked most often in Northeast Philadelphia, where—based on her recollection—most of the customers were Pennsylvania Medicaid recipients.

58. As part of her daily activities, Mbabazi interacted with customers dropping off and filling prescriptions.

59. As a general Walgreens policy, the pharmacy's goal was to fill prescriptions as quickly as possible.

60. Walgreens did not train its employees to seek out other insurance benefits before filling prescriptions for Medicaid recipients.

61. Walgreens did not train its employees to ask Medicaid recipients or their providers whether prescriptions were for an injury related to an auto or work accident.

62. Walgreens instead billed whatever insurance was already on file for a customer, even if that insurance is Medicaid.

63. The only time Walgreens requested insurance information was when dealing with new customers or customers whose insurance had expired.

64. Cherdoud is a Pennsylvania Medicaid recipient.

65. Cherdoud sustained injuries in an auto accident in Philadelphia, Pennsylvania on November 14, 2017.

66. Pursuant to 75 Pa.C.S. § 1712, Cherdoud received medical benefits (also known as "personal injury protection" or "PIP" benefits) from his auto insurer to pay for treatment resulting from the above accident.

67. Cherdoud visited the emergency room at Jefferson Methodist Hospital ("Jefferson") on November 15, 2017 due to pain from the above accident.

68. After relating the visit to an auto accident, Jefferson billed Cherdoud's auto insurance as the primary insurer.

69. Jefferson did not bill Cherdoud's Medicaid plan.

70. Cherdoud received a prescription for ibuprofen from the Jefferson physician.

71. Cherdoud received physical therapy at Medical Rehabilitation Centers of Pennsylvania ("MRCP") following his November 14, 2017 auto accident.

72. MRCP related the treatment to Cherdoud's auto accident, and billed Cherdoud's auto insurance as the primary insurer.

73. MRCP did not bill Cherdoud's Medicaid plan.

74. Cherdoud received three prescriptions for meloxicam from the MRCP physician.

75. Cherdoud filled the ibuprofen and meloxicam prescriptions at his local Walgreens at 2310 W. Oregon Avenue, Philadelphia, Pennsylvania.

76. Walgreens filled the ibuprofen prescription on November 15, 2017, and the meloxicam prescriptions on November 22, 2017, December 19, 2017 and January 31, 2018.

77. Consistent with its billing practices, Walgreens billed Medicaid for the above prescriptions since that was the insurance Walgreens had on file for Cherdoud.

78. Walgreens did not attempt to utilize Cherdoud's auto insurance benefits, or make any effort to identify other coverage, before billing Medicaid for the above prescriptions.

79. Pennsylvania Medicaid paid the four claims that Walgreens submitted for Cherdoud.

80. Since Pennsylvania Medicaid paid Walgreens for Cherdoud's prescriptions, and Walgreens had no knowledge of Cherdoud's auto benefits, it can be reasonably inferred that Walgreens certified to Pennsylvania Medicaid that no other coverage existed. Moreover, Walgreens must have utilized an NCPDP code indicating that no other coverage existed when it submitted its claims to Pennsylvania Medicaid.

81. Walgreens retained the money it received from Pennsylvania Medicaid for the above claims.

## COUNT I
## Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

82. Relators re-allege all preceding and subsequent paragraphs as though fully set forth herein.

83. Walgreens submitted millions of false and fraudulent claims for payment to Pennsylvania Medicaid, including the claims arising from Cherdoud's auto accident.

84. When submitting claims to Pennsylvania Medicaid, Walgreens expressly certified that no other coverage was available.

85. When submitting claims to Pennsylvania Medicaid, Walgreens impliedly certified compliance with all secondary payer obligations, including its

duty to make reasonable efforts to identify and utilize medical resources before billing Medicaid.

86. Walgreens's express and implied certifications were knowingly false, as Walgreens made no effort to identify or use other coverage before billing Pennsylvania Medicaid.

87. Walgreens's express and implied certifications were material to Pennsylvania Medicaid's decision to pay Walgreens, as demonstrated by the following:

    a. To qualify for federal funding, Pennsylvania Medicaid systematically refuses payment when there is evidence of primary coverage at the time of submission and demands reimbursement when evidence of primary coverage is discovered after making payment. *See* 55 Pa. Code. §§ 1101.83(a), 1150.51(a).

    b. Pennsylvania expressly designates secondary payer regulations, including the requirement to identify and use other coverage, as conditions of payment. *See* 55 Pa. Code §§ 1121.11(c), 1121.51.

    c. Providers who violate Pennsylvania's secondary payer regulations are subject to enforcement actions for double the amount paid plus interest, as well as loss of enrollment. *See* 55 Pa. Code § 1101.83(e).

    d. Secondary payer regulations serve Congress's intent that Medicaid be the payer of last resort. *See* S. Rep. No. 99-146, at 313 (1985).

Compliance with secondary payer regulations go to the essence of a bargain between Medicaid and providers.

88. The foregoing false certifications were intended to induce, and did induce, payment from Pennsylvania Medicaid.

89. Thus, Walgreens's claims to Pennsylvania Medicaid, including those arising from Cherdoud's auto accident, violated the FCA.

90. Pennsylvania Medicaid paid the foregoing false and fraudulent claims with state and federal funds.

91. Walgreens is liable to the United States for three times the total amount paid by Pennsylvania Medicaid, plus a civil penalty for each false claim submitted to Pennsylvania Medicaid.

## COUNT II
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G)

92. Relators re-allege all preceding and subsequent paragraphs as though fully set forth herein.

93. Walgreens, by virtue of its noncompliance with the billing regulations discussed herein, was not entitled to the funds it received from Pennsylvania Medicaid. Since Walgreens was not entitled to the funds, the funds constitute overpayments.

94. Walgreens recklessly disregarded its duty to exercise reasonable diligence in identifying and returning such overpayments, as required by federal and

state law. *See* 42 U.S.C. § 1320a-7k(d); 42 C.F.R. § 401.305; 55 Pa. Code. §§ 1101.83, 1101.69.

95. Moreover, Walgreens is incapable of identifying overpayments since it makes no effort to secure pertinent coverage information from customers.

96. Thus, Walgreens knowingly and wrongfully retained overpayments from Pennsylvania Medicaid in violation of the FCA's reverse false claims provision.

97. The money that Walgreens wrongfully retained included federal funds.

98. Walgreens is liable to the United States for three times the total amount paid by Pennsylvania Medicaid, plus a civil penalty for each overpayment retained by Walgreens.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the United States of America, through the Relators, pray for judgment against the Defendant, entering the following relief: (a) an award equal to three times the amount of damages sustained by the government by reason of Defendant's misconduct; (b) a civil penalty for the maximum amount allowed for each false or fraudulent claim submitted; (c) an award of attorneys' fees and costs; (d) an award to Relator for the maximum amount allowed under 31 U.S.C. § 3730(d); and, (e) all other relief the Court deems just and proper.

## JURY DEMAND

Relators demand trial by jury on all issues pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted:

Jeremy E. Abay (PA # 316730)
John K. Weston (PA # 26314)
SACKS WESTON DIAMOND, LLC
1845 Walnut Street, Suite 1600
Philadelphia, Pennsylvania 19103
T: (215) 925-8200 | F: (267) 639-5422
jabay@sackslaw.com
jweston@sackslaw.com

*Attorneys for Relators,*
*Juliet Mbabazi and Khaldoun Cherdoud*

Dated:  May 21, 2019