IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CIVIL ACTION |
| *ex rel*. **JULIET MBABAZI** *et al.* | : | |
| *Plaintiffs/Relators* | : | NO. 19-2192 |
| | : | |
| **v.** | : | |
| | : | |
| **WALGREEN CO.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    SEPTEMBER 28, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs/Relators Juliet Mbabazi ("Mbabazi") and Khaldoun Cherdoud ("Cherdoud") (collectively, "Plaintiffs" or "Relators") brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–-3733, against Defendant Walgreen Co. ("Defendant" or "Walgreens"), alleging that Walgreens submitted fraudulent claims for Medicaid payments by falsely certifying (expressly and/or impliedly) that the beneficiaries did not have other available insurance coverage for the claims and/or that Walgreens had complied with all applicable secondary payer statutes/regulations.  Before this Court is Walgreens' motion to dismiss, [ECF 21], which Relators have opposed.  [ECF 26].  The issues raised in the motion have been fully briefed and are ripe for disposition.  For the reasons stated herein, Walgreens' motion is granted, *in part*, and denied, *in part*.

**BACKGROUND**

Relators filed this *qui tam* action[1] against Walgreens, averring that Walgreens violated the FCA when it submitted claims for payment to Pennsylvania's Medicaid program without first determining whether the beneficiaries had other available insurance coverage. This matter was originally filed under seal to allow the United States Government (*i.e.*, the Department of Justice) time to decide whether to intervene on behalf of Relators. The Government elected to not intervene, [ECF 6], and, thereafter, the complaint was unsealed, [ECF 9]. Following service of the unsealed complaint, Walgreens filed the underlying motion to dismiss.

When ruling on a motion to dismiss, this Court must accept as true the well-pleaded allegations in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The relevant facts are summarized as follows:

### *Overview of Medicaid Reimbursement*

Medicaid, funded jointly by the federal and state governments, provides health benefits to eligible low-income individuals and individuals with disabilities. Pennsylvania offers Medicaid through both fee for service ("FFS") and managed care organizations ("MCO"). The Pennsylvania Department of Human Services ("DHS") administers the FFS delivery system and pays providers directly for each covered service received by a Medicaid beneficiary. MCOs are private insurance companies under contract with DHS to administer Medicaid insurance plans. Pennsylvania pays MCOs on a capitated basis. As such, MCOs are paid a set fee for each enrolled Medicaid beneficiary, regardless of whether any particular beneficiary receives services during the period covered by the payment.

The federal Medicaid statute has secondary payer requirements. As such, it is intended to be the payer of last resort. Other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program. Federal law requires States to implement third party liability programs which ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third-party coverage exists that is legally liable

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vt. Agency of Nat. Res. v. U. S. ex rel. Stevens*, 529 U.S. 765, 768 n.1 (2000). A private person, called a *qui tam* relator, brings an action "'for the person and for the United States Government against the alleged false claimant, 'in the name of the Government.'" *Id.* at 769 (quoting 31 U.S.C. § 3730(b)(1)).

to pay for those services. Pennsylvania ensures Medicaid's secondary payer status by requiring providers to utilize other insurance benefits before billing the Medicaid program. It also requires providers to undertake reasonable efforts to determine whether a Medicaid beneficiary has other available medical benefits before billing Medicaid.

### *Relators' Factual Allegations*

Mbabazi is a licensed pharmacist. She was employed by Walgreens as a pharmacist from January 2016 through January 2018. During her employment with Walgreens, Mbabazi worked at over forty (40) retail locations in Eastern Pennsylvania, spending most of her time at stores in Philadelphia. As part of her daily activities, Mbabazi interacted with customers filling prescriptions.

According to Mbabazi, Walgreens did not train its employees to seek out other insurance benefits before filling prescriptions for Medicaid recipients, nor did it train its employees to ask Medicaid recipients or their providers whether prescriptions were for an injury related to an automobile or work accident. Instead, Walgreens billed whatever insurance was already on file, even if that insurance was Medicaid.

Cherdoud is a Pennsylvania Medicaid recipient. He sustained injuries in an automobile accident on November 14, 2017. Pursuant to 75 Pa. Cons. Stat. § 1712, Cherdoud received medical benefits from his automobile insurer to pay for medical treatment resulting from the accident; specifically from Jefferson Methodist Hospital ("Jefferson") and Medical Rehabilitation Centers of Pennsylvania ("MRCP"). Both of these providers billed Cherdoud's automobile insurance as the primary insurer.

Jefferson and MRCP prescribed various medications as part of Cherdoud's treatments. Cherdoud filled these prescriptions at his local Walgreens located at 2310 West Oregon Avenue, Philadelphia, Pennsylvania. Consistent with its billing practices, Walgreens billed Medicaid for the prescriptions since that was the insurance Walgreens had on file for Cherdoud. Walgreens did not attempt to utilize Cherdoud's automobile insurance benefits, nor did it make any effort to identify other coverage before billing Medicaid for Cherdoud's prescriptions.

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has

3

a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alteration omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has held that "plaintiffs must plead FCA claims with particularity in accordance with Rule 9(b)." *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 301 n.9 (3d Cir. 2011) (citing *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys*, 149 F.3d 227, 234 (3d Cir. 1998)). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Fed. R. Civ. P. 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the 'precise misconduct with which they are charged, and to safeguard defendants against spurious charges' of fraud.").

4

The Third Circuit has made clear, however, that at the pleading stage, Rule 9(b)'s particularity requirement does not require a plaintiff to identify a specific claim for payment to state a claim for relief.  *Wilkins*, 659 F.3d at 308.  Rather, the Third Circuit suggested that a plaintiff should "identify representative examples of specific false claims that a defendant made to the Government in order to plead an FCA claim properly."  *Id.*  Courts in this Circuit have found that a plaintiff may satisfy that requirement in one of two ways:  (1) "by pleading the date, place or time of the fraud"; or (2) by using an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 2011 WL 6719139, at *2 (D.N.J. Dec. 20, 2011) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

In *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014), the Third Circuit noted that the "Fourth, Sixth, Eighth, and Eleventh Circuits have held that a plaintiff must show 'representative samples' of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors," while the "First, Fifth, and Ninth Circuits, however, have taken a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Id.* at 155–56 (citations and quotations omitted).  Considering that "the purpose of Rule 9(b) is to provide defendants with fair notice of the plaintiffs' claims," the Third Circuit adopted "the more 'nuanced' approach followed by the First, Fifth, and Ninth Circuits."  *Id.* at 156–57 (citations and quotations omitted).

Thus, in order to survive a motion to dismiss and satisfy Rule 9(b), a plaintiff asserting claims under the FCA "must provide particular details of a scheme to submit false claims paired

5

with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 158–59 (citations omitted). "Describing a mere opportunity for fraud will not suffice," and, instead, a plaintiff must provide "sufficient facts to establish a plausible ground for relief." *Id.* at 159 (citations omitted).

**DISCUSSION**

The FCA's *qui tam* provision permits a private person (known as a "relator") to bring a civil action on behalf of the United States against any individual or company who has knowingly presented a false or fraudulent claim for payment to the United States. 31 U.S.C. § 3730(b).[2] The FCA imposes liability upon a person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval, or who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. *Id.* at § 3729(a)(1)(A)–(B); *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018). Consistent with the Supreme Court's decision in *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016), the Third Circuit has held that a relator must also allege materiality—*i.e.*, that the alleged misrepresentation was material to the government's payment decision. *See U. S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017). Accordingly, a plaintiff must allege facts sufficient to plausibly show causation, falsity, *scienter*, and materiality. *Id*.

"There are two categories of false claims under the FCA: a factually false claim and a legally false claim." *Wilkins*, 659 F.3d at 305. A claim is factually false when the claimant misrepresents what goods or services it provided to the government. *Id.* A claim is legally false when a claimant knowingly, falsely certifies that it has complied with a statute or regulation,

---

[2] The FCA encourages insiders to disclose fraud by awarding successful *qui tam* plaintiffs a portion of any judgment, plus reasonable attorneys' fees and costs. *Id*. at § 3730(d).

compliance with which is a condition or precondition for government payment.  *Id.*; *see also Petratos*, 855 F.3d at 486.  The second category, legally false claims, is further subcategorized into two theories of liability:  "express false certification" and "implied false certification."  *U.S. ex rel. Portilla v. Riverview Post Acute Care Ctr.*, 2014 WL 1293882, at *14 (D.N.J. Mar. 31, 2014).  Here, Relators assert only legally false claims, under both express and implied false certification.

"Under the 'express false certification' theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds."  *Wilkins*, 659 F.3d at 305 (quoting *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2008)).  Implied false certification liability "attaches when a claimant seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment."  *Id.*; *see also Universal Health Servs.*, 136 S. Ct. at 1995.  For liability to attach, the defendant's false certification "about its compliance with a legal requirement [must be] 'material to the Government's payment decision.'"  *U.S. ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018) (quoting *Universal Health Servs.* 136 S. Ct. at 1996).  "Materiality" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money."  31 U.S.C. § 3729(b)(4).

Here, Relators contend that Walgreens' alleged false certifications fall into two categories: (1) express false certifications that no other insurance coverage was available; and (2) implied false certifications of compliance with federal laws and regulations governing Walgreens' obligations under the secondary payer regulations.  This Court considers both categories in turn.

7

### *<u>Relators' Express False Certification Claims</u>*

Relators' express false certification claims are premised on their allegation that Walgreens certified that no other insurance coverage was available when submitting claims for payment to Pennsylvania Medicaid. Walgreens argues that these false certification claims should be dismissed because: (1) Relators fail to allege with particularity that Walgreens submitted any claims in violation of the billing requirements on which Relators rely; and (2) Relators do not allege how any representations Walgreens made with respect to any such claims were false.

Specifically, with respect to its first argument, Walgreens contends that Relators failed to allege an express certification. In their complaint, however, Relators describe the process by which pharmacies are required to certify whether a beneficiary has other insurance coverage when submitting a claim to Pennsylvania Medicaid. (Compl., ECF 1, ¶¶ 31–35). While Relators' complaint contains sparse facts underlying the alleged false certification, Relators allege that "[w]hen submitting claims to Pennsylvania Medicaid, Walgreens expressly certified that no other coverage was available." (*Id.* ¶ 84). These factual allegations, accepted as true at this stage of the proceedings, satisfy Relators' burden as to the existence of an express certification.

Walgreens next argues that even if Relators have alleged an express certification of no other coverage, Relators have failed to allege facts sufficient to plausibly show that the certification was false. This Court agrees. Relators' express false certification claim is premised on Relators' allegation that Walgreens falsely certified that no other coverage was available when submitting claims for payment to Pennsylvania Medicaid. To sustain this claim, however, Relators must allege facts sufficient to plausibly show that the alleged certification/representation was false. In other words, Relators must allege facts sufficient to show that there was no other coverage available, as Walgreens certified was the case. Relators' complaint contains no such facts. As

such, Relators have failed to state a claim premised on an express false certification. Relators' express false certification claim is, therefore, dismissed, without prejudice. This Court grants Relators leave to file an amended complaint within fourteen (14) days reasserting these claims, if warranted by the facts and applicable law as set forth in this Opinion.

### *Relators' Implied False Certification Claims*

Relators' implied false certification claims are premised on their contention that Walgreens impliedly certified compliance with Pennsylvania secondary payer rules. Specifically, Relators allege that Walgreens "impliedly certified compliance with all secondary payer obligations, including its duty to make reasonable efforts to identify and utilize medical resources before billing Medicaid." (Compl., ECF 1, ¶ 85). Walgreens argues that this claim should be dismissed because Relators have not alleged facts to plausibly show: (1) a misleading representation made false by Walgreens' failure to disclose noncompliance with statutory/regulatory requirements; and (2) an underlying violation of regulation.

As to Walgreens' first challenge to Relators' implied false certification claims, this Court disagrees. Relators have alleged that Walgreens certified/represented that no other coverage existed when submitting claims for payment to Pennsylvania Medicaid. (*Id.* ¶ 84). In support of their implied certification claims, Relators have also alleged that Walgreens failed to discharge its duty to undertake reasonable efforts to verify that the beneficiaries had no other insurance coverage. (*Id.* ¶¶ 85–86). These allegations satisfy Relators' pleading requirements for a "specific representation" rendered misleading by Walgreen's non-disclosure of its non-compliance with a statutory or regulatory requirement.

In support of their second challenge to Relators' implied false certification claims, Walgreens argues that Relators have not alleged facts to plausibly show a violation of the

9

regulations on which Relators rely. Specifically, Walgreens contends that the applicable regulations do not expressly require Walgreens to undertake "a secondary benefits investigation ***every time*** a Medicaid beneficiary fills a prescription by asking the beneficiary whether other coverage exists." (ECF 29, at p. 7) (emphasis added). While Walgreens is correct that the regulations do not expressly require any frequency to Walgreens' efforts to identify other available insurance coverage, the secondary payer regulatory scheme as a whole applies when providers seek payment for claims: "Providers shall make reasonable efforts to secure from the recipient sufficient information regarding the primary coverages necessary to bill the insurers or programs." 55 Pa. Code § 1101.64(a). In their complaint, Relators allege that "Walgreens made no effort to identify or use other coverage before billing Pennsylvania Medicaid." (Compl., ECF 1, ¶ 86). Accordingly, this allegation is sufficient to show that Walgreens violated an applicable regulation/statute. Relators' implied false certification claims survive the motion to dismiss.

### *Relators' Scienter Allegations*

Walgreens next argues that Relators have failed to plead facts sufficient to plausibly show that it acted with the requisite *scienter*. To satisfy this prong of an FCA claim, Relators must allege that Walgreens knew that the claim for payment was false or fraudulent. *Petratos*, 855 F.3d at 487. The FCA defines "knowingly" to include "actual knowledge," "deliberate ignorance," and "reckless disregard," and to "require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1). Congress added the deliberate ignorance and reckless disregard standards in 1996 to reach "the 'ostrich' type situation where an individual has 'buried his head in the sand' and failed to make simple inquiries which would alert him that false claims are being submitted." S. Rep. No. 99-345, at 21; *see also* H.R. Rep. No. 99-660, at 21. Congress thus recognized "that

those who seek public funds [must] act with scrupulous regard for the requirements of the law." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63 (1984).

Under this standard, courts have allowed FCA claims based on a defendant's failure to make reasonable inquiries to ensure compliance with secondary payer rules. For example, in *Negron v. Progressive Cas. Ins. Co.*, the relator alleged that anyone buying automobile insurance via Progressive's website could elect "health-first" coverage, making their health insurer the primary payer of medical bills resulting from a car accident. 2016 WL 796888, *1–2 (D.N.J. Mar. 1, 2016). This caused healthcare providers to bill Medicare and Medicaid as primary over Progressive. *Id.* at *1. Progressive moved for dismissal, arguing that the complaint failed to show *scienter* because the relator did not allege that Progressive knew about its policyholders' Medicare and Medicaid status. *Id.* at *9. The court denied dismissal, finding that the relator pleaded reckless disregard "by alleging that [Progressive] failed to make reasonable and prudent inquiries to ensure compliance with [secondary payer laws]." *Id.*; *see also U. S. ex rel. Jersey Strong Pediatrics, LLC v. Wanaque Convalescent Ctr.*, 2017 WL 4122598, at *9 (D.N.J. Sept. 18, 2017) (finding allegations that defendant failed to ascertain patients' private health insurance sufficient to plead *scienter*).

Here, Relators have alleged that Walgreens certified the absence of any other insurance coverage without undertaking any "effort to identify or use other coverage before billing Pennsylvania Medicaid." (Compl., ECF 1, ¶ 86). This Court finds these allegations sufficient to meet the *scienter* requirement at this pleading stage.

### *Relators' Materiality Allegations*

Walgreens next argues that Relators' claims are subject to dismissal because Relators have not alleged facts sufficient to meet the materiality requirement. This materiality argument is

premised on Walgreens' contention that Relators have only attempted to plead claims arising out of MCO claims for payment and not claims arising out of FFS claims for payment. In support of this argument, Walgreens notes that the only specific example described in Relators' complaint concerned Walgreens' submission of claims for payment for the prescriptions of Cherdoud, who is an MCO beneficiary, not an FFS beneficiary. The premise of this argument is misplaced in light of the Third Circuit's determination that an FCA plaintiff need not plead specific claims for payment or representative samples at the pleading stage. *See Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156–57 (3d Cir. 2014). While the specific examples Relators pled in their complaint may implicate MCO claims only and not FFS claims, as addressed above, Relators have also pled general facts sufficient at this stage to support claims arising out of FFS claims.

Notwithstanding, Walgreens' argument premised on the distinction between MCS claims and FFS claims is viable with respect to the materiality element. To meet this element, Relators must allege facts to show that the government would not have made the payments had it known that Walgreens had not complied with secondary payer obligations. *Petratos*, 855 F.3d at 487. In the case of fixed-rate claims, like MCO claims, "courts have held that there is no FCA liability where a falsely-claimed service or item does not affect the rate of reimbursement." *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 445 (E.D. Pa. 2020) (citing *U.S. ex rel. Stephens v. Tissue Science Lab'ys, Inc.*, 664 F. Supp. 2d 1310, 1317–18 (N.D. Ga. 2009)). Thus, to assert an FCA claim in the fixed-rate context, Relators must allege facts plausibly showing "a connection 'between the false claims and the increase in payouts'—*i.e.*, the 'causal chain that affected payment from the program.'" *Id.* (citation omitted). Here, to the extent Relators intended to assert their FCA claims premised on Walgreens' handling of MCO claims for payment, Relators have failed to allege facts necessary to plausibly show the requisite connection between the false

representations and an increase in the rate of reimbursement.  Accordingly, any such claims are dismissed, without prejudice.  This Court grants Relators leave to file an amended complaint within fourteen (14) days reasserting these claims, if warranted by the facts and applicable law, as set forth in this memorandum.

### *Relators' Reverse False Claim*

At Count II, Relators assert a "reverse false claim" under 31 U.S.C. § 3229(a)(1)(G).  In their opposition to the motion to dismiss, Relators note that they "expect, however, that the Court will dismiss their Count II based on *Sturgeon*, 438 F. Supp. 3d at 280, issued after Relators filed their Complaint."  (Relators' Resp. in Opp., ECF 26, at p. 10 n.15).  In *Sturgeon v. Pharmerica Corp.*, the court there held that reverse FCA claims alleging only that defendants wrongfully retained fraudulently obtained funds are not cognizable, because such claims "merely duplicate[]" affirmative FCA claims.  438 F. Supp. 3d 246, 280–81 (E.D. Pa. 2020).  This Court agrees with the analysis in *Sturgeon* and adopts it herein.  *See also Haw. ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 2021 WL 124683, at *16 (D. Haw. Jan. 12, 2021) ("[T]he court agrees with the substantial authority holding that an actionable reverse false claim cannot be based on a defendant's failure to refund the same payment that was obtained by an actionable false claim.").  Accordingly, Relators' reverse false claim, as pled, is dismissed, with prejudice.

**CONCLUSION**

For the reasons stated herein, Walgreens' motion to dismiss is granted with respect to Relators' claims premised on express false certifications and MCO claims for payment.  Relators may amend these claims consistent with this Opinion.  Defendant's motion is also granted as to Count II, which is dismissed with prejudice.  An Order consistent with this Memorandum Opinion follows.      NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.